CP-2001-2                                                        1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Rafael Avilés Cordero Héctor Tosado Arocho | Querella 2002 TSPR 124 157 DPR _____ |
|---|---|

Número del Caso: CP-2001-2

Fecha: 5/septiembre/2002

Oficina del Procurador General:
                          Lcda. Yvonne Casanova Pelosi
                          Procuradora General Auxiliar

Abogados de la Parte Querellada:
                          Lcdo. Manlio Arraiza Donate
                          Lcdo. Luciano Sánchez Martínez

Materia: Conducta Profesional
        (La suspensión es efectiva a partir del 19 de septiembre    de
        2002, fecha en que se le notificó al abogado el Per Curiam y
        Sentencia)

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correcciones del proceso
        de compilación y publicación oficial de las decisiones del
        Tribunal. Su distribución electrónica se hace como un servicio
        público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael Avilés Cordero                                    Conducta
Héctor Tosado Arocho                    CP-2001-2    Profesional

PER CURIAM

San Juan, Puerto Rico, a 5 de septiembre de 2002.

El 3 de junio de 1999, la señora Eusebia Martínez Lugo radicó ante la Oficina del Procurador General una queja en contra de los licenciados Rafael Avilés Cordero y Héctor A. Tosado Arocho.  Alegó, en síntesis, que los referidos letrados fungieron como notarios otorgando instrumentos públicos en los cuales tenían un claro interés personal o, por lo menos, un grave conflicto de interés.  En cumplimiento con la resolución emitida por este Tribunal el 22 de diciembre de 2000, el Procurador General de Puerto Rico presentó querella el 29 de enero de 2001, formulando contra ambos letrados cargos por violaciones a los Cánones 21 y 38 del Código de Ética Profesional[1].  Les

---

[1] 4 L.P.R.A. Ap. IX, Cánones 21 y 38.

imputó, además, violaciones a lo dispuesto en los Artículos 2 y 5 de la Ley Notarial de Puerto Rico[2], así como incumplimiento con lo establecido en la Regla 5 del Reglamento Notarial.[3] Específicamente, los cargos que se le imputan al licenciado Héctor A. Tosado Arocho en la querella son los siguientes:

CARGO I

El Lic. Héctor Tosado Arocho violentó el Artículo 5 de la Ley Notarial de Puerto Rico (4 LPRA Sec. 2005)[,] el cual prohíbe a todo notario a intervenir como parte en los negocios jurídicos por éste autorizados.

CARGO II

El Lic. Héctor Tosado Arocho violentó las disposiciones del Canon 21 de Etica Profesional[,] el cual obliga a todo abogado a evitar conflicto entre sus intereses personales y los de su cliente.

CARGO III

El Lic. Héctor Tosado Arocho violentó las disposiciones del Canon 38 de Etica Profesional[,] el cual, entre otras cosas[,] obliga a todo abogado a preservar el honor y la dignidad de la profesión legal y a evitar hasta la apariencia de conducta profesional impropia.

Por otra parte, en contra del licenciado Rafael Avilés Cordero, se formularon los cargos siguientes:

CARGO I

El Lic. Rafael Avilés Cordero violentó las disposiciones de la Regla 5 del Reglamento Notarial[,] la cual específicamente dispone que el notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de Notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo.

CARGO II

El Lic. Rafael Avilés Cordero violentó el Artículo 2 de la Ley Notarial de Puerto Rico (4 LPRA Sec. 2002)[,] el cual obliga a todo notario a dar fé [sic] y autenticidad conforme a las leyes de los negocios jurídicos que ante él se otorguen.

---

[2] 4 L.P.R.A. secs. 2002 y 2005.

[3] 4 L.P.R.A. Ap. XXIV, R. 5.

CARGO III

El Lic. Rafael Avilés Cordero violentó las disposiciones del Canon 21 de Etica Profesional[,] el cual, entre otras cosas, obliga a todo abogado a abstenerse de abogar a favor de un cliente en un asunto sobre el cual debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

CARGO IV

El Lic. Rafael Avilés Cordero incurrió en violación a las disposiciones del Canon 38 de Etica [P]rofesional, 4 LPRA Ap. IX C. 38, el cual, entre otras cosas, obliga a todo abogado a preservar el honor y la dignidad de la profesión legal y a evitar hasta la apariencia de conducta profesional impropia.

Mediante Resolución de 8 de mayo de 2001, nombramos al licenciado Agustín Mangual Hernández, Comisionado Especial. Dicho Comisionado señaló una conferencia con antelación a la vista, la cual se celebró el 5 de junio de 2001. En la referida conferencia los abogados de las partes estipularon la admisión en evidencia de diez (10) documentos.[4] La vista evidenciaria se celebró el 6 de agosto de 2001. Las partes le informaron al Comisionado Especial que no presentarían evidencia testifical alguna y que, con la prueba documental estipulada, daban por sometido el procedimiento disciplinario. El Comisionado Especial, cumpliendo con nuestra encomienda, rindió su informe el 25 de septiembre de 2000. Dicho funcionario encontró probado que en marzo o abril del 1998, el licenciado Héctor A. Tosado Arocho y su esposa, la señora Nilsa Ivette Jiménez Martínez, se comunicaron con la señora Eusebia Martínez Lugo, a quien conocían previamente, porque estaban interesados en adquirir la propiedad en la cual ésta residía. Dicha propiedad le pertenecía a la señora Eusebia Martínez Lugo y a su ex cónyuge, el señor Ángel Luis Santiago López, en común pro indiviso. La señora Eusebia Martínez Lugo aceptó la oferta verbal que le hizo el matrimonio Tosado-Jiménez para adquirir su propiedad y, en ese mismo momento, el licenciado Tosado Arocho procedió a adelantarle la suma de treinta mil dólares ($30,000) para que ésta adquiriera mediante compra la participación en común pro indiviso de su ex cónyuge sobre parte

---

[4] Véase Orden emitida por el Comisionado Especial de 18 de julio de 2001.

del referido inmueble.[5]  De la misma manera, encontró probado que el 1 de mayo de 1998, el señor Ángel Luis Santiago López y la señora Eusebia Martínez Lugo otorgaron la escritura número diecisiete (17) sobre División de Comunidad ante el licenciado Héctor Tosado Arocho, haciendo constar que eran dueños de una propiedad ubicada en el Barrio Piedra Gorda de Camuy, con una cabida superficial de 3.618 cuerdas.[6]  En la referida escritura se consignó que el matrimonio habido entre las partes fue disuelto mediante sentencia dictada por el antiguo Tribunal Superior, Sala de Arecibo, el 18 de octubre de 1993.  Se declaró, además, que el terreno donde ubicaba la residencia era propiedad de la compareciente, habiéndolo adquirido mediante la escritura número siete (7) sobre Participación y Adjudicación de Herencia otorgada el 26 de marzo de 1997 ante el licenciado Rafael Avilés Cordero, socio del licenciado Héctor Tosado Arocho.[7]  Por último, se consignó que los comparecientes, de común acuerdo, habían decidido poner fin a la comunidad de bienes existente entre ellos y, por virtud de lo antes dispuesto, se le adjudicaba al señor Ángel Santiago López la suma de treinta mil dólares ($30,000) por su participación en la referida edificación.[8]

El Comisionado Especial encontró probado que el licenciado Héctor Tosado Arocho y su esposa comenzaron a realizar gestiones para que la señora Eusebia Martínez Lugo les entregara la posesión de la propiedad.[9]  Dichas gestiones fueron infructuosas, por lo que el licenciado Héctor Tosado Arocho presentó una querella ante el Tribunal de Primera Instancia, Sala Municipal de Camuy, al amparo de la Ley Núm. 140 de 23 de julio de 1974.[10]  El 7 de

---

[5] Informe del Comisionado Especial, pág. 2.

[6] Íd.; Exhibit Estipulado II.

[7] Informe del Comisionado Especial, pág. 3; Exhibit Estipulado II.

[8] Íd.

[9] Íd.

[10] 32 L.P.R.A. sec. 2871, et seq.  En la referida querella, el licenciado Héctor Tosado Arocho alegó que la señora Eusebia Martínez Lugo incumplió con su compromiso de desalojar la propiedad en controversia, en contravención a su obligación contraída por virtud del contrato de compraventa con precio aplazado celebrado entre las partes.  Véase Exhibit Estipulado III.

agosto de 1998 se celebró una vista ante el referido Tribunal. La señora Eusebia Martínez Lugo se comprometió, en dicha ocasión, a desalojar la propiedad y a firmar el contrato de compraventa previamente acordado.[11] El desalojo no se efectuó en la fecha pactada. En consecuencia, el Tribunal celebró otra vista el 13 de agosto de 1998, a la cual compareció el licenciado Héctor Tosado Arocho, representado por el coquerellado, licenciado Rafael Avilés Cordero. La señora Eusebia Martínez Lugo fue representada por la licenciada Carmen Hermina González.[12] Las partes llegaron a un acuerdo, el cual quedó plasmado en una Resolución dictada el 12 de marzo de 1999 por el honorable Edwin Rodríguez Montalvo, Juez Municipal.[13] Dicho acuerdo estipulaba que la señora Martínez Lugo firmaría la escritura de segregación y compraventa y entregaría la propiedad al licenciado Héctor Tosado Arocho. Establecía, además, la suma de noventa y cinco mil dólares ($95,000) como el precio de compraventa que se haría constar en la escritura a otorgarse. Disponía que la señora Eusebia Martínez Lugo había recibido con anterioridad la suma de treinta mil dólares ($30,000); que la suma de sesenta y cinco mil dólares ($65,000) se entregaría en el plazo de sesenta (60) días y que existía una deuda pendiente entre las partes de ochenta mil dólares ($80,000), la cual se abonaría en dos plazos adicionales. El primer plazo sería de veinticinco mil dólares ($25,000), pagadero en dos (2) años. El segundo plazo sería de cincuenta y cinco mil dólares ($55,000), pagadero en cuatro (4) años. Ambas cantidades serían evidenciadas mediante dos (2) pagarés al portador garantizados con hipoteca sobre el referido inmueble. Finalmente, se acordó que la escritura de compraventa se otorgaría en la oficina del licenciado Rafael Avilés Cordero.

Al día siguiente, el 14 de agosto de 1998, y mediante la escritura número cincuenta y siete (57) sobre Compraventa con Precio Aplazado, otorgada ante el licenciado Rafael Avilés Cordero, doña Eusebia Martínez Lugo le traspasó al matrimonio Tosado-Jiménez, a título de compraventa, la referida

---

[11] Informe del Comisionado Especial, pág. 3.

[12] Íd.

propiedad.[14]  En dicho documento público se hizo constar que el precio de compraventa era de noventa y cinco mil dólares ($95,000), de los cuales treinta (30) mil dólares se habían entregado con anterioridad a ese acto, y sesenta y cinco mil dólares ($65,000) serían pagaderos en sesenta (60) días.[15]

Ese mismo día, se otorgó ante el coquerellado, licenciado Rafael Avilés Cordero, la escritura número cincuenta y ocho (58) sobre Segunda Hipoteca en Garantía de Pagaré por la suma de veinticinco mil dólares ($25,000) y la escritura número 59 sobre Tercera Hipoteca en Garantía de Pagaré por la suma de cincuenta y cinco mil dólares ($55,000).[16]  En ambas escrituras comparecieron como otorgantes el querellado, licenciado Héctor Tosado Arocho, y su esposa.[17]  Las referidas obligaciones garantizadas por hipoteca no se hicieron formar parte del negocio jurídico objeto de la escritura pública número cincuenta y siete (57) sobre Compraventa con Precio Aplazado.[18]  El 18 de diciembre de 1998, cuatro (4) meses después de haber sido otorgada la escritura pública número cincuenta y siete (57), fue presentada para su inscripción en el Registro de la Propiedad.[19]  Las escrituras públicas números cincuenta y ocho (58) y cincuenta y nueve (59) fueron presentadas en el Registro de la Propiedad el 22 de octubre de 1999, un (1) año y dos (2) meses después de su otorgamiento.[20]

Los problemas entre las partes continuaron, razón por la cual la señora Eusebia Martínez Lugo presentó el 2 de febrero de 1999 una demanda sobre nulidad de contrato, cobro de dinero y daños y perjuicios ante el Tribunal de Primera Instancia, Sala Superior de Arecibo, contra el licenciado Héctor

---

[13] Íd.; Exhibit Estipulado III.

[14] Informe del Comisionado Especial, pág. 3; Exhibit Estipulado IV.

[15] Íd.

[16] Informe del Comisionado Especial, págs. 3 y 4; Exhibits Estipulados V y VI.

[17] Íd.

[18] Informe del Procurador General, pág. 6; Exhibit Estipulado IV.

[19] Informe del Comisionado Especial, pág. 4; Exhibit Estipulado VIII.

[20] Íd.; Exhibits Estipulados IX y X.

Tosado Arocho, su esposa y la sociedad de gananciales compuesta por ambos.[21]
En dicha demanda la señora Eusebia Martínez Lugo alegó que para el mes de
mayo de 1998 había llegado a un acuerdo verbal con los demandados para
venderles su propiedad por la suma de ciento setenta y cinco mil dólares
($175,000).   Como parte de dicho acuerdo, los referidos demandados le
entregaron treinta mil dólares ($30,000) en esa fecha y se comprometieron
a entregarle sesenta y cinco mil dólares ($65,000) en el acto de otorgamiento
de la escritura pública sobre compraventa.   Los restantes ochenta mil
dólares ($80,000) se pagarían en el plazo de dos (2) años, al ocho por ciento
(8%) de interés anual.   Adujo, además, que posteriormente el querellado,
licenciado Héctor Tosado Arocho, comenzó a presionarla para que desalojara
la propiedad, a pesar de que no se había otorgado la escritura pública sobre
compraventa, ni se había realizado el pago de sesenta y cinco mil dólares
($65,000) acordado.   Finalmente, afirmó que el 14 de agosto de 1998,
mediante intimidación y amenazas de parte de los letrados querellados, fue
forzada a otorgar la referida escritura pública número cincuenta y siete
(57), la cual alegadamente recogía un acuerdo de compraventa distinto al
originalmente pactado.    En particular, dicho instrumento público
establecía que el precio de compraventa era de noventa y cinco mil ($95,000)
dólares, cuando la realidad era que el precio pactado había sido de ciento
setenta y cinco mil  dólares ($175,000).    La querellante posteriormente
enmendó su demanda, haciendo constar que el demandado, luego de iniciado
el pleito, le había entregado la cantidad de sesenta y cinco mil dólares
($65,000) adeudada.

El 10 de agosto de 2000, y luego de varios incidentes, las referidas
partes llegaron a una "Estipulación por Transacción", en la cual hicieron
constar que el querellado, licenciado Héctor Tosado Arocho, y su esposa le
habían pagado a la señora Eusebia Martínez Lugo **la suma de ochenta mil dólares
($80,000) por concepto de la venta del inmueble objeto del litigio, quedando**

---

[21] Informe del Comisionado Especial, pág. 4; Exhibit Estipulado VII.

**esta última satisfecha de dicha deuda.**[22] Consignaron, además, que la señora Eusebia Martínez Lugo desistía con perjuicio de su reclamación y aceptaba dicha cantidad como resarcimiento total del balance pendiente de pago del inmueble más todos los daños y perjuicios alegados en la demanda.[23] Las partes reconocieron y acordaron que cualquier otro acuerdo pactado anteriormente entre ellas en relación con el contrato objeto del litigio quedaba sustituido y novado por la transacción convenida. El Tribunal de Primera Instancia, Sala Superior de Arecibo, le impartió su aprobación al acuerdo transaccional entre las partes y, conforme los términos allí expresados, dictó sentencia el 29 de agosto de 2000.[24]

Los letrados formularon su contestación a la querella, de manera conjunta, mediante escrito presentado el 19 de abril de 2001.[25] Expresaron su deseo de que se adoptaran por referencia los argumentos esbozados por ambos en su escrito titulado "Posición de los Lcdos. Rafael Avilés Cordero y Héctor A. Tosado Arocho sobre el Informe del Procurador General" de 30 de noviembre de 2000.[26] En el aludido escrito los letrados arguyeron que el licenciado Héctor Tosado Arocho no infringió el Artículo 5 de la Ley Notarial, supra, al otorgar la escritura número diecisiete (17) sobre División de Comunidad, pues dicho notario no fue parte en el instrumento público, ni contenía éste disposición alguna a su favor. Adujeron, además, que el licenciado Héctor Tosado Arocho no incumplió con la obligación impuesta por el Canon 21 de Ética Profesional, supra, por cuanto dicho canon exige, como requisito para la imposición de una sanción disciplinaria, que exista una relación abogado-cliente, la cual nunca se configuró entre éste y la querellante. Alegaron, que el licenciado Héctor Tosado Arocho no fungió como representante legal de la querellante, ni antes, ni después del

---

[22] Informe del Comisionado Especial, pág. 4; Exhibit Estipulado VII.

[23] Íd.

[24] Íd.

[25] Véase escrito titulado "Contestación a la Querella".

[26] No obstante, exceptuaron de lo anterior la contestación al cargo II imputado en la querella en contra del licenciado Rafael Avilés Cordero.

otorgamiento de la mencionada escritura. En cuanto a las infracciones imputadas al licenciado Rafael Avilés Cordero, admitieron que dicho letrado representó al licenciado Héctor Tosado Arocho en el procedimiento judicial tramitado ante el Tribunal de Primera Instancia, Sala Municipal de Camuy, al amparo de la Ley Núm. 140, supra. No obstante, mantuvieron que su representación legal había cesado al momento de otorgar las escrituras número cincuenta y siete (57), cincuenta y ocho (58) y cincuenta y nueve (59) sobre Compraventa con Precio Aplazado, Segunda Hipoteca en Garantía de Pagaré y Tercera Hipoteca en Garantía de Pagaré, respectivamente. En consecuencia, no existió ningún conflicto de interés entre sus labores como representante legal de una parte y como notario en las referidas escrituras. Alegaron, que su acción de otorgar las escrituras no infringió la Regla 5 del Reglamento Notarial de Puerto Rico, supra, pues la designación del licenciado Rafael Avilés Cordero como notario fue producto de la estipulación llegada por las partes, con la anuencia del Juez Municipal que presidía el caso y de la representación legal de la señora Eusebia Martínez Lugo. Finalmente, respecto a la violación de lo contemplado en el Artículo 2 de la Ley Notarial de Puerto Rico, supra, esbozaron que el letrado Rafael Avilés Cordero se circunscribió a consignar, en la escritura de compraventa otorgada ante él, el precio que surgía de la resolución emitida por el Tribunal. Adujeron, que el letrado se ajustó a la resolución citada y que carecía de facultad para variar los términos dispuestos en la misma.

Evaluado el Informe del Comisionado Especial, la prueba documental estipulada y las posiciones de los letrados querellados, nos encontramos en posición de resolver.

II

De los cargos presentados contra ambos letrados querellados se desprenden imputaciones de violación a los Cánones 21 y 38 de Ética Profesional, supra. Se le imputa, además, al licenciado Héctor Tosado Arocho haber infringido el Artículo 5 de la Ley Notarial, supra, y al

licenciado Rafael Avilés Cordero transgredir el Artículo 2 de la Ley Notarial de Puerto Rico, supra, y la Regla 5 del Reglamento Notarial, supra.

El primer cargo contra el licenciado Héctor A. Tosado Arocho le imputa la violación de la obligación profesional impuesta por el Artículo 5 de la Ley Notarial de Puerto Rico, supra. Dicho artículo dispone lo siguiente:

> (a) **Ningún notario podrá autorizar instrumentos en el que él intervenga como parte o que contenga disposiciones a su favor.** Tampoco podrá autorizarlos si alguno de los otorgantes es pariente suyo dentro del cuarto grado de consanguinidad o segundo de afinidad, excepto cuando aquél comparezca en el instrumento en calidad representativa. (Énfasis nuestro.)

> (b) No producirán efecto las disposiciones a favor de parientes, dentro del cuarto grado de consanguinidad o segundo de afinidad del notario que autorizó el instrumento público en que se hicieron.

El querellado arguye que su actuación al otorgar como notario la escritura pública número diecisiete (17) sobre División de Comunidad no infringió el Artículo 5 de la Ley Notarial, supra, ya que éste no fue parte en el instrumento público, ni contenía el documento disposición alguna a su favor. No podemos avalar su posición. La escritura pública número diecisiete (17) sobre División de Comunidad, mediante la cual los comparecientes, la señora Eusebia Martínez Lugo y el señor Ángel Luis Santiago, de común acuerdo ponían fin a la comunidad de bienes entre ellos existente sobre la edificación ubicada en el Barrio Piedra Gorda de Camuy, se pudo llevar a cabo porque se le adjudicó la cantidad de treinta mil dólares ($30,000) al ex cónyuge de la querellante como pago de su participación en el referido inmueble. **Dicha suma de dinero provino directamente del licenciado Héctor Tosado Arocho, como adelanto al pago del precio de compraventa estipulado por éste con la querellante, con anterioridad al otorgamiento de la escritura pública de división de comunidad de bienes. Es decir, el documento público por él autorizado, que contenía el negocio jurídico de la división de la comunidad de bienes existente entre los ex cónyuges, se hizo posible gracias al dinero suplido por el querellado, y se otorgó para su beneficio personal futuro. De modo que, si bien es cierto que el referido letrado no compareció como parte en el documento autenticado**

**ante sí como notario público, no es menos cierto que tal otorgamiento viabilizó su posterior adquisición del inmueble, a título de compraventa. Previo a la autorización del referido documento, ya el querellado, licenciado Tosado Arocho, tenía un interés pecuniario en el inmueble objeto de dicho instrumento público.** No albergamos duda alguna de que el querellado violó lo dispuesto en el estatuto antes indicado.

El licenciado Héctor Tosado Arocho enfrenta, en el segundo cargo formulado en la querella en su contra, imputaciones de conducta contraria a lo dispuesto en el Canon 21 del Código de Ética Profesional, supra. El Procurador General de Puerto Rico aduce que la actuación del querellado al autorizar la escritura pública número diecisiete (17) sobre división de comunidad configuró un conflicto entre los intereses del letrado y los de su cliente. El Canon 21 del Código de Ética Profesional, supra, lee, en lo aquí pertinente, de la manera siguiente:

> El **abogado** tiene **para con su cliente** un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
>
> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueben. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste. (Énfasis nuestro.)

. . .

El conflicto de intereses contemplado en el Canon 21 de Ética Profesional, supra, presenta tres (3) situaciones que deben ser evitadas por todo abogado: "que en beneficio de un cliente se abogue por aquello a

lo que el letrado debe oponerse en cumplimiento de sus obligaciones para con otro cliente; que un abogado acepte la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de un cliente anterior; y que un abogado acepte una representación legal, o que continúe en ella, cuando su juicio profesional pueda ser afectado por sus intereses personales".[27]  Es decir, dicha norma ética pretende evitar conducta profesional que mine el principio cardinal de confianza en que debe fundamentarse toda relación fiduciaria entre un abogado y su cliente.  Dicha prohibición comprende la situación en la cual el abogado se encuentra ante la encrucijada actual de cumplir con su deber profesional de asesorar o representar adecuadamente a su cliente y la de servir sus propios intereses. También plantea el aparente o potencial conflicto futuro entre los intereses antes mencionados.[28]  Finalmente, es requisito esencial para que opere la prohibición contemplada en el Canon 21, supra, **la previa existencia de una relación abogado-cliente.**[29]  La ausencia de dicha relación impide la imposición de sanciones disciplinarias por violación al citado canon.[30]

Entre el letrado querellado y la querellante no se configuró la existencia de una relación abogado-cliente cobijada por la prohibición contenida en el Canon 21, supra. En consecuencia, no procede la imposición de una sanción disciplinaria por infracción al aludido Canon de Ética Profesional.

---

[27] In re Sepúlveda Girón, res. el 24 de octubre de 2001, 2001 TSPR 153, 155 D.P.R. ___ (2001), 2001 J.T.S. 157; In re Toro Cubergé, 140 D.P.R. 523 (1996).

[28] In re Sepúlveda Girón, supra.

[29] In re Soto Cardona, 143 D.P.R. 50 (1997); In re Soto, 134 D.P.R. 772 (1993); In re Belén Trujillo, 126 D.P.R. 743 (1990); García O'Neill v. Cruz, 126 D.P.R. 518, 523 (1990); Ortiz v. Soliván Miranda, 120 D.P.R. 559 (1988); In re Orlando Roura, 119 D.P.R. 1 (1987); In re Carreras Rovira y Suárez Zayas, 115 D.P.R. 778 (1984); In re Rojas Lugo, 114 D.P.R. 687 (1983); In re Añeses Peña, 113 D.P.R. 756 (1983); In re Roldán González, 113 D.P.R. 238 (1982); In re Concepción Suárez, 111 D.P.R. 486 (1981).  En In re Belén Trujillo, supra, expresamos que es imprescindible determinar, inicialmente, si existe una relación abogado-cliente.  Expresamos que ésta comienza cuando el cliente acude al abogado a requerir sus servicios profesionales para que lo asesore o lo represente en un asunto jurídico.

Por último, se le imputa al licenciado Héctor Tosado Arocho la violación de las disposiciones contempladas en el Canon 38 de Ética Profesional, supra. El Canon 38, supra, provee, en lo pertinente, lo siguiente:

> El abogado deberá esforzarse, al máximo de su capacidad, **en la exaltación del honor y dignidad de su profesión,** aunque al así hacerlo conlleve sacrificios personales y **debe evitar hasta la apariencia de conducta profesional impropia.** ...
>
> **Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.** En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos. De igual modo, no debe permitir a sus clientes, sin importar su poder o influencia, llevar a cabo actos que tiendan a influenciar indebidamente a personas que ejercen cargos públicos o puestos privados de confianza. Lo antes indicado no impide, naturalmente, que un abogado dé a sus clientes su opinión informada y honesta sobre la interpretación o validez de una ley, orden o reglamento, que no ha sido, a su vez, interpretado o clarificado en sus disposiciones por un tribunal competente. (Énfasis nuestro.)

> ...

En reiteradas ocasiones hemos sostenido que el abogado tiene que desempeñarse con dignidad y alto sentido del honor, aunque el hacerlo le represente ciertos sacrificios personales. De la misma manera, todo abogado debe evitar hasta la apariencia de conducta profesional impropia.[31] Es decir, todo abogado debe ser escrupuloso en el cumplimiento de las obligaciones impuestas por los Cánones de Ética Profesional y debe cuidarse de "que sus actuaciones no den margen a la más leve sospecha de impropiedad".[32] Hemos expresado que la apariencia de conducta impropia puede resultar perniciosa, minando el respeto de la ciudadanía por sus instituciones de justicia y la confianza de los clientes en sus abogados.[33] Asimismo, la

---

[30] Del propio lenguaje del Canon 21 del Código de Ética Profesional de Puerto Rico, supra, se desprende que se requiere la existencia de una relación abogado-cliente.

[31] In re Sepúlveda Girón, supra; In re Filardi Guzmán, 144 D.P.R. 710, 718 (1998); In re Rojas Lugo, supra; In re Cancio Sifre, 106 D.P.R. 386, 398-399 (1977); In re Meléndez Pérez, 104 D.P.R. 770, 772 (1976).

[32] In re Bonilla Rodríguez, res. el 17 de julio de 2001, 2001 TSPR 110, 154 D.P.R. ___ (2001), 2001 J.T.S. 111; In re Toro Cubergé, supra.

[33] In re Sepúlveda Girón, supra.

apariencia de conducta impropia puede tener un efecto dañino sobre la imagen, confianza y respeto del público por su gobierno, como la verdadera impropiedad ética.[34] **Esta apariencia impropia tiene que sostenerse sobre la impresión que se le da al público de la violación efectiva de alguno de los Cánones de Ética Profesional.**[35]  El otorgamiento de un documento notarial en contravención a la Ley Notarial o su reglamento constituye una violación al Canon 38, supra.[36]

La actuación del querellado notario de autorizar la escritura pública número diecisiete (17), que dividía la comunidad de bienes existente sobre una propiedad, mediando el pago de una suma de dinero provista por el letrado previamente, constituye una apariencia de conducta impropia, vedada por el Canon 38, supra.  **Máxime cuando dicha suma de dinero fue adelantada para adquirir una participación ganancial en la propiedad objeto del negocio jurídico.**  La actuación del licenciado Héctor Tosado Arocho, otorgando un documento público en contravención a la Ley Notarial de Puerto Rico, constituye una infracción al canon antes mencionado.  Dicho proceder, además, no preserva el honor y la dignidad de la profesión legal.

El Procurador General de Puerto Rico le imputa al licenciado Rafael Avilés Cordero, como primer cargo en la querella por él radicada, la infracción de la prohibición  contemplada en la Regla 5 de nuestro Reglamento Notarial, supra.  Dicha regla dispone, en lo pertinente, lo siguiente:

> **La práctica de la profesión de abogado puede ser en algunas ocasiones incompatible con la práctica de la notaría.**
>
> El Notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
>
> **El Notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario**

---

[34] Íd.

[35] Íd.

[36] Íd.

**en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo.**

. . .

**Queda siempre al sano juicio del notario y sus socios o compañeros de oficina, dentro de su responsabilidad profesional, decidir cuándo deben abstenerse de actuar aun en casos en que su actuación estuviere permitida, pero que por sus particulares circunstancias en la dimensión ética podrían generar un potencial de conflicto o la apariencia de conducta impropia.** (Énfasis nuestro.)

La antes mencionada regla expone la norma general relativa a la incompatibilidad de funciones del abogado y del notario, cuando ambas participaciones versan sobre un mismo asunto u ocurren en un mismo caso. En reiteradas ocasiones hemos distinguido la función de un letrado en el desempeño de la práctica de la abogacía y de la notaría. En In re Colón Ramery,[37] en adelante In re Colón Ramery I, y en su reconsideración, In re Colón Ramery,[38] en adelante In re Colón Ramery II, expresamos que el ejercicio de la abogacía y del notariado envuelven quehaceres distintos y que el abogado notario ha de ser escrupuloso en deslindar los referidos campos.[39] En In re Colón Ramery I, supra, establecimos que la función dual de abogado-notario se permitiría sólo en acciones ex-parte. Aclaramos que en estos procedimientos de jurisdicción voluntaria no existe la apariencia de parcialidad impropia que se suscita en procedimientos contenciosos. En dicho caso, insistimos en que el notario, a diferencia del abogado, está llamado a ser imparcial con todos los otorgantes del instrumento que autorice. Aclaramos que el elemento de imparcialidad es de gran importancia en el notariado de estirpe latina y que este criterio debe regir todas sus actuaciones. En el ejercicio de su ministerio y en el descargo de la fe pública en él depositada, el notario no puede tomar partido o bando, porque representa la ley para todas las partes. Su obligación de ilustrar, de orientar y de advertir ha de desplegarla para todos por igual, con

---

[37] 133 D.P.R. 555 (1993).

[38] 138 D.P.R. 793 (1995).

[39] Véase también, In re Jiménez Brackel, res. el 11 de mayo de 1999, 99 TSPR 73, 148 D.P.R. ___ (1999), 99 J.T.S. 79; In re Lavastida et al., 109 D.P.R. 45 (1979), opinión del Juez Asociado señor Irrizarry Yunqué.

imparcialidad.  En <u>In re Colón Ramery II</u>, <u>supra</u>, recalcamos que la  práctica de la profesión de abogado es incompatible con la práctica de la notaría, cuando ambas intervenciones del abogado notario traten sobre el mismo asunto.  De la misma manera, dejamos claramente establecido en <u>B. & L., Inc. v. P. R. Cast. Steel Corp.</u>[40] que ante la posibilidad de un aparente conflicto de intereses, un abogado no debe asumir la función dual de abogado notario en un mismo caso y la mejor práctica requiere que sea un notario neutral el que autorice cualquier documento.  La intervención de un notario neutral ayuda a despejar cualquier apariencia de conducta impropia.  Expresamos que no basta ser efectivamente imparcial, hay, además, que aparentarlo.[41] Finalmente, en <u>In re Matos Bonet</u>,[42] establecimos, sin lugar a dudas, **que un notario debe abstenerse de autorizar documentos públicos respecto a propiedades objeto del litigio, en el cual él actúa como abogado de una de las partes otorgantes.**[43] **Determinamos que la norma adoptada, producto de una interpretación de la Regla 5 del Reglamento Notarial de Puerto Rico,** **<u>supra</u>, tendría un efecto prospectivo.**

El licenciado Rafael Avilés Cordero fungió como representante legal del licenciado Héctor Tosado Arocho en la vista celebrada el 13 de agosto de 1998, ante el Tribunal de Primera Instancia, Sala Municipal de Camuy, relacionada con la querella presentada por éste último, a tenor con la Ley Núm. 140, <u>supra</u>, en contra de la aquí querellante, para exigir el cumplimiento específico de un alegado contrato verbal de compraventa sobre un inmueble.  Al día siguiente, el letrado Rafael Avilés Cordero actuó como notario, autorizando las escrituras públicas número cincuenta y siete (57), cincuenta y ocho (58) y cincuenta y nueve (59) sobre Compraventa con Precio

---

[40] 114 D.P.R. 808 (1983).

[41] Íd.

[42] Res. el 23 de enero de 2001, 2001 TSPR 10, 153 D.P.R. ___ (2001), 2001 J.T.S. 14.

[43] El abogado querellado en dicho caso autorizó como notario unas escrituras de compraventa sobre unas propiedades que eran objeto de un litigio relativo al cumplimiento específico de contrato, siendo el letrado representante legal de la parte demandada.

Aplazado, Segunda Hipoteca en Garantía de Pagaré y sobre Tercera Hipoteca en Garantía de Pagaré, respectivamente, todas relacionadas a la compraventa del inmueble objeto del litigio. En la contestación a la querella formulada en su contra por el Procurador General de Puerto Rico, el licenciado Rafael Avilés Cordero aceptó que representó legalmente al licenciado Héctor Tosado Arocho en el procedimiento judicial ante el Tribunal de Primera Instancia, Sala Municipal de Camuy. Arguyó que su actuación como notario, al autorizar los tres (3) instrumentos públicos en controversia, no constituyó una violación a la prohibición contemplada en la aludida regla, debido a que éste autorizó las escrituras públicas una vez cesada su gestión profesional como representante legal del licenciado Héctor Tosado Arocho, y con el aval de las partes y del Tribunal. No le asiste la razón. El letrado querellado fue el abogado del licenciado Héctor Tosado Arocho en un procedimiento judicial contencioso que versaba sobre el negocio jurídico de compraventa habido entre la querellante y el letrado coquerellado. El licenciado Rafael Avilés Cordero posteriormente autorizó instrumentos públicos que recogían justamente el negocio jurídico objeto del pleito. Su propio cliente fue uno de los otorgantes en cada una de las tres (3) escrituras públicas. La actuación dual del querellado como abogado y notario en un mismo asunto, en el mismo caso, resultan ser un evidente ejemplo de la incompatibilidad prohibida, contenida en la Regla 5 del Reglamento Notarial de Puerto Rico, supra. Sin embargo, tomando en consideración que los hechos del caso de autos ocurrieron previo a la norma prospectiva enunciada en In re Matos Bonet, supra, no procede la imposición de una sanción por infracción a la regla antes mencionada.

El segundo cargo formulado contra el licenciado Rafael Avilés Cordero le imputa la violación de la obligación notarial impuesta en el Artículo 2 de la Ley Notarial de Puerto Rico, supra. Dicho estatuto lee de la manera siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado **para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen,** sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e

interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Énfasis nuestro.)

En numerosas ocasiones hemos expresado que el abogado representa los intereses de su cliente, en cambio el notario representa la fe pública.[44] En In re Filardi Guzmán, supra, expresamos que la Ley Notarial de Puerto Rico, supra, está orientada a que el notario pueda desempeñar su profesión con probidad, con la competencia y destreza jurídica necesaria y con la diligencia, el cuidado y la observación del valor ético de la verdad, que imprime al contenido de los numerosos documentos que ante él se otorgan.

El notario ejerce una función clave de inestimable importancia en los negocios jurídicos. En su función de custodio de la fe pública notarial, el Notario le imparte veracidad, autenticidad y legalidad a los instrumentos públicos y notariales que autoriza. Al autorizar un documento, el notario da fe pública y asegura que ese documento cumpla con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima.[45] La dación de fe está avalada por la confianza de que los hechos jurídicos y circunstancias acreditados por el notario en el instrumento público son veraces y correctos. Es evidente pues, que la fe pública constituye la espina dorsal de la profesión notarial.[46] En In re Meléndez Pérez, supra, expresamos que el notario no es un simple observador del negocio jurídico que ante él se realiza, limitando su actuación a cerciorarse de la identidad de partes y autenticidad de las firmas. Su función, por ser pública, trasciende la de un autómata legalizador de firmas y penetra en el campo de la legalidad de la transacción que ante él se concreta.[47] En atención de lo anterior,

---

[44] In re Sepúlveda Girón, supra.

[45] In re González Maldonado, res. el 20 de diciembre de 2000, 2000 TSPR 192, 152 D.P.R. ___ (2000), 2000 J.T.S. 203; In re Rivera Arvelo y Ortiz Velázquez, 132 D.P.R. 840, 863 (1993); In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986).

[46] In re Feliciano Ruiz, supra.

[47] Íd.

reiteradamente hemos resuelto que faltar a la veracidad de los hechos es una de las faltas más graves en que un notario, como custodio de la fe pública, puede incurrir, ya que la certificación de un hecho falso constituye un acto detrimental a la fe pública.[48]

Al autorizar la escritura pública número cincuenta y siete (57) sobre Compraventa con Precio Aplazado, el notario Rafael Avilés Cordero consignó y dio fe de que el precio de compraventa del inmueble objeto del negocio jurídico era de noventa y cinco mil dólares ($95,000). El licenciado Rafael Avilés Cordero aduce que su proceder al consignar el referido precio en el instrumento público es cónsono con lo estipulado por las partes en la vista celebrada el 13 de agosto de 1998 ante el Tribunal de Primera Instancia, Sala Municipal de Camuy, y que carecía de facultad en derecho para variar los términos estipulados. La querellante siempre ha alegado que el precio real de la compraventa acordado entre las partes era de ciento setenta y cinco mil dólares ($175,000). Surge de la estipulación acordada por las partes en el caso sobre nulidad de contrato, cobro de dinero y daños y perjuicios, y de la sentencia, de conformidad a las estipulaciones, emitida por el Tribunal de Primera Instancia, que la suma de ochenta mil dólares ($80,000) le era pagada a la demandante por concepto de la venta del inmueble objeto del litigio. Esto es, la parte demandada le pagó a la demandante la suma de treinta mil dólares ($30,000), sesenta y cinco mil dólares ($65,000) del precio aplazado y ochenta mil dólares ($80,000) como saldo final del precio de la compraventa, para un total de ciento setenta y cinco mil dólares ($175,000) por concepto de la compraventa de la propiedad en controversia. No albergamos duda alguna que dicha cantidad constituía el precio real de la compraventa. No obstante, entendemos que no se probó mediante **prueba clara, robusta y convincente** que el licenciado Rafael Avilés Cordero conociera que ese era el precio de la compraventa, es decir, que

---

[48] In re Díaz Ortiz, res. el 29 de febrero de 2000, 2000 TSPR 53, 150 D.P.R. ___ (2000), 2000 J.T.S. 66; In re Vera Vélez, res. el 5 de abril de 1999, 99 TSPR 46, 148 D.P.R. ___ (1999), 99 J.T.S. 51; In re Iglesias Pérez, 146 D.P.R. 14 (1998); In re Vargas Hernández, 135 D.P.R. 603 (1994).

conociera la falsedad de lo vertido en el instrumento público.[49]  No procede, bajo tal cuadro fáctico, que encontremos al letrado querellado incurso en una violación al principio de la **fe pública notarial** plasmado en el Artículo 2 de la Ley Notarial de Puerto Rico, supra.[50]

El tercer cargo imputado en contra del licenciado Rafael Avilés Codero le señala la violación al deber ético contemplado en el Canon 21 del Código de Ética Profesional, supra.  El conflicto de intereses contemplado en el aludido canon se refiere a las situaciones en donde existen o puedan existir intereses encontrados entre clientes concurrentes o sucesivos de un mismo abogado, o cuando existan intereses encontrados entre el cliente y el abogado.  Lo antes expresado no es de aplicación a la situación de autos.  Como hemos señalado, la aplicación de la prohibición contemplada en el Canon 21, supra, requiere la existencia previa de una relación abogado cliente.  El abogado, en su función notarial, no representa a ninguna de las partes otorgantes.[51]  El notario, en su desempeño, es el depositario de la fe pública notarial y el asesor y guía de todas las partes otorgantes por igual.

Sarah Torres Peralta expresa, en su libro sobre derecho notarial puertorriqueño,[52] con relación a lo antes enunciado, lo siguiente:

---

[49] Véase In re Caratini Alvarado, res. el 9 de marzo de 2001, 2001 TSPR 46, 153 D.P.R. ___ (2001) 2001 J.T.S. 45.  En esa oportunidad establecimos que el criterio a utilizarse en los procedimientos disciplinarios ante este Tribunal para aquilatar la prueba será el de prueba clara, robusta y convincente.

[50] Es pertinente señalar, que consignar un precio menor al acordado en una escritura pública no sólo infringe la fe pública notarial, sino que transgrede nuestras leyes fiscales.  Ello implica una disminución en las cuantías a pagarse por sellos de Rentas Internas, no sólo en el acto de autorización de una escritura pública, sino que también en el arancel a ser pagado por la presentación del instrumento público en el Registro de la Propiedad. Véase Reyes v. Jusino, 116 D.P.R. 275 (1985).

[51] In re Colón Ramery I, supra; In re Colón Muñoz, 131 D.P.R. 121 (1992).

[52] Sarah Torres Peralta, El Derecho Notarial Puertorriqueño, Publicaciones STP, Inc., 1995, Capítulo IV, pág. 4.55.

... Ante tal realidad, es claro que en el ejercicio de la función notarial, no es factible planteamiento alguno en torno al canon 21, por cuanto está ausente **ab initio**, la representación dual de abogado-cliente. De ahí, que siendo imposible la coincidencia en el mismo abogado de clientes en la gestión notarial, no hay cabida entonces para supuestos conflictos de intereses de los prohibidos en el canon 21. ...

La actuación del licenciado Rafael Avilés Cordero no puede constituir una violación al Canon 21, <u>supra</u>, porque el letrado, en su función de notario, jamás fue el abogado de la señora Eusebia Martínez Lugo, por lo que no hubo intereses encontrados entre dos (2) clientes del abogado querellado. De la misma manera, no se configuró un conflicto entre los intereses de la querellante y los de ese letrado.

Finalmente, se le imputa al letrado una violación al Canon 38 de Ética Profesional, <u>supra</u>, en cuanto a su obligación como abogado de preservar el honor y la dignidad de la profesión y de evitar la apariencia de conducta impropia.

Recalcamos, que el Canon 38 del Código de Ética Profesional, <u>supra</u>, exige que los abogados se esfuercen al máximo en exaltar el honor y la dignidad de la profesión legal, obligación que se extiende a su vida personal y privada. Dicho canon impone hasta la obligación profesional de evitar la apariencia de conducta impropia. Esta apariencia impropia tiene que sostenerse sobre la impresión que se le da al público de la violación efectiva de alguno de los Cánones de Ética Profesional o de la Ley Notarial de Puerto Rico.[53] No habiendo el letrado querellado infringido ninguna de las normas antes mencionadas, no procede encontrarlo incurso en una violación al Canon 38, <u>supra</u>.

Como mencionáramos previamente, el Comisionado Especial determinó, como cuestión de hecho, que la escritura pública número cincuenta y siete (57) fue presentada ante el Registro de la Propiedad para su inscripción cuatro (4) meses después de otorgada y que las escrituras públicas números cincuenta y ocho (58) y cincuenta y nueve (59) fueron presentadas en el Registro de la Propiedad un (1) año y dos (2) meses después de su otorgamiento. La Ley Notarial de Puerto Rico contiene una enumeración

taxativa de las funciones inherentes que ejercerá todo notario en el descargo de su desempeño profesional. El notario ejerce una función pública consistente en dar fe y autenticidad de los negocios jurídicos, actos y contratos que ante él se realicen, recibe, interpreta, asesora y le da forma legal a la voluntad de las partes, redacta instrumentos públicos y documentos notariales conforme a derecho, forma protocolos y conserva en éstos los instrumentos públicos, expide copias, autoriza afidávits, testimonios y declaraciones de autenticidad.[54] Toda otra gestión a ser efectuada, no inherente al ejercicio del notariado, tiene que ser acordada por las partes. De ordinario, un notario no está obligado a presentar los documentos públicos que haya autorizado ante el Registro de la Propiedad.[55] No obstante, si el notario se obliga por contrato con los otorgantes en ese sentido, debe presentar prontamente la escritura pública ante el Registro de la Propiedad. De la prueba documental estipulada en el caso de autos no surge, de manera alguna, que existiera un convenio contractual entre las partes que le impusiera la obligación al licenciado Rafael Avilés Cordero de presentar las escrituras públicas cincuenta y siete (57), cincuenta y ocho (58) y cincuenta y nueve (59) sobre Compraventa con Precio Aplazado, Segunda Hipoteca en Garantía de Pagaré y sobre Tercera Hipoteca en Garantía de Pagaré, respectivamente, ante el Registro de La Propiedad.[56]

Hemos establecido que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores tales como la reputación del abogado en la comunidad, el previo historial profesional de éste, si constituye la actuación objeto del procedimiento disciplinario su primera falta, la aceptación de la misma y su sincero arrepentimiento, el

---

[53] In re Sepúlveda Girón, supra.

[54] Torres Peralta, op. cit., Capítulo I, págs. 1.27-1.28.

[55] Rosas González v. Acosta Pagán, 134 D.P.R. 720 (1993).

[56] No podemos olvidar, que nuestro derecho sustantivo dispone que la inscripción de una escritura pública sobre hipoteca, en el Registro de la Propiedad, es un requisito necesario e ineludible para que ésta nazca a la vida jurídica. Es decir, para que dicha garantía real exista se requiere el acto de inscripción en el Registro de la Propiedad, por ser la misma de naturaleza constitutiva. Véase, 30 L.P.R.A. sec. 2607; Rosario Pérez v. Registrador, 115 D.P.R. 491 (1984).

ánimo de lucro que incitó su actuación, si hubo resarcimiento al cliente y cualquier otro atenuante o agravante que medie en los hechos particulares al caso.[57]

III

Por los fundamentos antes expuestos, y tomando en consideración el hecho de que el licenciado Héctor Tosado Arocho lleva catorce años (14) en la práctica profesional de la abogacía, y que este procedimiento constituye la primera falta a sus obligaciones profesionales y éticas,[58] y mediando como atenuante que satisfizo a la vendedora, señora Eusebia Martínez Lugo, la totalidad del precio de compraventa pactado, o sea, la suma de ciento setenta y cinco mil dólares ($175,000), procede que decretemos su suspensión indefinida de la notaría y un (1) año del ejercicio de la abogacía.

Le imponemos al licenciado Héctor Tosado Arocho el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país.  Deberá, además, certificarnos dentro de un término de treinta (30) días, a partir de su notificación, el cumplimiento de estos deberes, notificando también al Procurador General.

La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra notarial de Héctor Tosado Arocho, incluyendo su sello notarial, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Apercibimos al letrado que, en lo sucesivo, deberá cumplir estrictamente con los deberes que exige la Ley y el Reglamento Notarial, supra, y los Cánones de Ética Profesional de Puerto Rico.  De volver a

---

[57] In re Díaz Ortiz, supra; In re Vélez Barlucea, res. el 26 de octubre de 2000, 2000 TSPR 158, 152 D.P.R. ___ (2000), 2000 JTS 170; In re Padilla Rodríguez, 145 D.P.R. 536 (1998); In re Ortiz Velázquez, 145 D.P.R. 308 (1998).

[58] El licenciado Héctor Tosado Arocho fue admitido por esta Curia al ejercicio de la abogacía el 1 de julio de 1988.  El 3 de agosto de 1988 le fue expedida autorización para practicar la notaría.

incurrir en otras faltas a sus deberes profesionales, no seremos tan benévolos.

En cuanto al licenciado Rafael Avilés Cordero, se le exonera de los cargos formulados por el Procurador General en su contra.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael Avilés Cordero
Héctor Tosado Arocho                                    Conducta
                                    CP-2001-2      Profesional

SENTENCIA

San Juan, Puerto Rico, a 5 de septiembre de 2002.

        Por los fundamentos expuestos en la Opinión <u>Per Curiam</u> que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia decretando la suspensión inmediata e indefinida de Héctor Tosado Arocho de la notaría y un (1) año del ejercicio de la abogacía, contado a partir de la notificación de esta Opinión <u>Per Curiam</u> y hasta que otra cosa disponga este Tribunal.

        Le imponemos a Héctor Tosado Arocho el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro de un término de treinta (30) días, a partir de su notificación, el cumplimiento de estos deberes, notificando también al Procurador General.

        La Oficina del Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra notarial de Héctor Tosado Arocho, incluyendo su sello notarial, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Apercibimos al letrado que, en lo sucesivo, deberá cumplir estrictamente con los deberes que exige la Ley y el Reglamento Notarial, y los Cánones de Ética Profesional de Puerto Rico.  De volver a incurrir en otras faltas a sus deberes profesionales, no seremos tan benévolos.

En cuanto al licenciado Rafael Avilés Cordero, se le exonera de los cargos formulados por el Procurador General en su contra.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Rebollo López disiente sin opinión escrita.  El Juez Presidente señor Andréu García y el Juez Asociado señor Fuster Berlingeri no intervinieron.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo