EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Carlos H. Rafucci Caro<br>(TS-9263) | 2021 TSPR 31<br><br>206 DPR _____ |

Número del Caso: CP-2017-13

Fecha: 12 de marzo de 2021

Oficina del Procurador General:

    Lcdo. Joseph G. Feldstein Del Valle
    Subprocurador General

    Lcda. Lorena Cortes Rivera
    Subprocuradora General

    Lcda. Minnie H. Rodríguez López
    Procuradora General Auxiliar

    Lcda. Miriam Álvarez Archilla
    Procuradora General Auxiliar

Abogada del querellado:

    Lcda. Margarita Carrillo Iturrino

Comisionada Especial:

    Hon. Mirinda Vicenty Nazario

Materia: Conducta Profesional – Ética y Responsabilidad Profesional; y Derecho Notarial.  El Lcdo. Lcdo. Carlos H. Rafucci Caro, en el ejercicio de su función notarial, infringió los Cánones 18, 19, 21 y 38 del Código de Ética Profesional (1970). En consecuencia, amonestamos al licenciado Rafucci Caro y le apercibimos de que en el futuro deberá actuar con mayor diligencia en el ejercicio profesional que desempeña.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Carlos H. Rafucci Caro<br>(TS-9263) | CP-2017-0013 | Conducta<br>Profesional |

**PER CURIAM**

En San Juan, Puerto Rico, a 12 de marzo de 2021.

Nos corresponde ejercer nuestro poder disciplinario para evaluar la conducta del Lcdo. Carlos H. Rafucci Caro (licenciado Rafucci Caro o querellado),[1] y determinar si, en el ejercicio de la abogacía y su función notarial, infringió los Cánones 18, 19, 21 y 38 del Código de Ética Profesional, *infra*. Resolvemos en la afirmativa. En virtud de los fundamentos que expondremos más adelante, amonestamos al letrado y le apercibimos que en el futuro deberá actuar con mayor diligencia en el ejercicio que desempeña y ceñirse estrictamente a los preceptos que rige el Código de Ética Profesional, *infra*, y los mandatos de la Ley Notarial de Puerto Rico, *infra*.

Procedemos a realizar un recuento de los hechos pertinentes al asunto ante nuestra consideración.

**I**

---

[1] El Lcdo. Carlos H. Rafucci Caro fue admitido a la práctica de la abogacía el 28 de junio de 1989 y juramentó como notario el 26 de junio de 1990.

El asunto disciplinario ante nuestra consideración inició el **29 de marzo de 2016, cuando el Sr. José Ramón Rodas Nazario (señor Rodas Nazario), Presidente de Serenity by the Sea, Inc. (SBTS) y Estancias de Villa Real, Inc. (Estancias) presentó una queja contra el licenciado Rafucci Caro.** En síntesis, planteó que el querellado quebrantó los postulados éticos que imperan en la abogacía y la notaría. Sostuvo que la relación de abogado-cliente inició entre ambos en el 2008, cuando el licenciado Rafucci Caro fue contratado como asesor legal. Posteriormente, representó a SBTS durante las gestiones relacionadas a la compraventa del proyecto *Cove by the Sea* (CBTS) ⸺durante catorce meses aproximadamente⸺ y, además, realizó los trámites relacionados con el financiamiento, el diligenciamiento de permisos gubernamentales para la construcción del proyecto y la evaluación de propuestas de contratistas y la presentación del crédito ante la Administración para el Financiamiento de la Vivienda (AFV).

Específicamente, en cuanto al desempeño como notario, puntualizó que el licenciado Rafucci Caro no fue diligente e incurrió varias irregularidades y faltas notariales al otorgar varias escrituras.

En particular, el señor Rodas Nazario arguyó que, el **7 de julio de 2010, el querellado autorizó la Escritura Núm. 25 de <u>Segregación y Compraventa</u> (Escritura Núm. 25); la Escritura Núm. 26 de <u>Liberación de Hipoteca</u> (Escritura**

Núm. 26); y la Escritura Núm. 27 de *Hipoteca* (Escritura Núm. 27) sobre el Solar Núm. 105 del Bloque I (1-105) de la Urbanización de Cerro Gordo. Por ello, recibió honorarios de abogado, sellos notariales, aranceles registrales para la presentación de las escrituras en el Registro de la Propiedad y expedición de copias certificadas. Así las cosas, **tres años después**, el señor Rodas Nazario se percató de la falta de inscripción por un estudio de título realizado el 28 de mayo de 2013. Por ello, el 31 de mayo de 2013, la Lcda. Wilma I. Marrero, representante legal del señor Rodas Nazario, realizó un requerimiento de la evidencia de la inscripción mediante correo electrónico. Sin embargo, el querellado admitió su incumplimiento y se obligó a realizar gestiones para lograr su inscripción. Así las cosas, el 5 de junio de 2013, el licenciado Rafucci Caro presentó los instrumentos públicos en el Registro de la Propiedad. Posteriormente, los asientos de presentación caducaron por incumplimiento del procedimiento requerido. **Finalmente, el 27 de abril de 2016, las escrituras fueron inscritas en el Registro de la Propiedad, esto es, seis años después de su otorgamiento.**

De otra parte, el licenciado Rafucci Caro autorizó la **Escritura Núm. 17 de <u>Donación</u> (Escritura Núm. 17) y la Escritura Núm. 19 de <u>Acta de hogar seguro</u> (Escritura Núm. 19) el 19 de junio de 2012.** Allí, el señor Rodas Nazario y su esposa concedieron a su hija la titularidad del

Solar A-1 localizado en la Urbanización de Estancias de Cerro Gordo. El señor Rodas Nazario sostuvo que obtuvo una notificación del Registro de la Propiedad en la cual se le informó que la presentación de las escrituras caducó el 10 de julio de 2012, por ausencia de gestión adicional para subsanar las faltas de los instrumentos, **después de ser presentadas vía fax en el Registro de la Propiedad el 25 de junio de 2012**. A tono con lo anterior, el 19 de noviembre de 2014, la Lcda. Karen K. Morales Pérez (licenciada Morales Pérez), representante legal del señor Rodas Nazario en ese momento, requirió una copia certificada de las escrituras y solicitó la devolución de los aranceles de presentación e inscripción de las escrituras que fueron pagados. En respuesta, el 17 de diciembre de 2014, el licenciado Rafucci Caro devolvió a la licenciada Morales Pérez $637, en concepto del valor de sellos y comprobantes para la gestión de presentación registral, e incluyó las copias certificadas de los instrumentos públicos.

Posteriormente, el 4 de mayo de 2015, la licenciada Morales Pérez cuestionó al querellado sobre la copia certificada de la **Escritura Núm. 18 de <u>Segregación, Liberación y Permuta</u> (Escritura Núm. 18), otorgada el 19 de junio de 2012, por Estancias y SBTS sobre los Solares H-95 y B-11 en la Urbanización Estancias de Cerro Gordo.** Ello, pues el Registro de la Propiedad le informó al señor Rodas Nazario que la misma fue presentada vía fax y

el asiento registral caducó al no subsanarse las faltas. Por ello, peticionó el dinero de los aranceles, sellos y comprobantes para la presentación y, a su vez, le advirtió al licenciado Rafucci Caro que la escritura adolecía de la descripción registral del solar B-11.

Así las cosas, el licenciado Rafucci Caro se obligó a presentar un acta de subsanación para corregir los errores de la escritura en el Registro de la Propiedad. En cumplimiento con lo anterior, el 30 de septiembre de 2015, el querellado presentó la **Escritura Núm. 68 de Acta de Subsanación (Escritura Núm. 68)** en el Registro de la Propiedad. Sin embargo, no se informó de esta gestión hasta el 18 de enero de 2016 cuando les remitió el recibo de presentación en el Registro de la Propiedad.

Por otra parte, en cuanto a la relación abogado-cliente, el señor Rodas Nazario alegó que el querellado incurrió en un claro conflicto de intereses y violó el deber de confidencialidad.[2] En específico, aseveró que el 3 de abril de 2012, el Sr. Alfonso Sacarello, Senior Manager Risk de Scotiabank, suscribió un contrato de opción de compraventa con el señor Rodas Nazario mediante el cual Scotiabank se comprometió a separar del mercado el proyecto CBTS a cambio del pago de una prima de $100,000 para mantener vigente la oferta hasta ejercer la opción de compraventa por $4,100,000. El señor Rodas Nazario enfatizó que, a pesar de las negociaciones, la

---

[2] Véase Queja, pág. 9.

compraventa no se realizó. Sostuvo que, como resultado, **el 18 de octubre de 2012, presentó una** <u>**Petición sobre sentencia declaratoria juramentada**</u> **en contra de Scotiabank en el Tribunal de Primera Instancia de Bayamón (**<u>**Serenity by the Sea, Inc. v. Scotiabank of Puerto Rico**</u>, **DAC2012-3035) mediante la cual arguyó que Scotiabank realizó gestiones que le impidieron obtener el financiamiento para ejercer la opción de compraventa.** Específicamente, planteó que la <u>Escritura Matriz del Régimen de Propiedad Horizontal</u> (Escritura Núm. 5)[3] tenía defectos que impedían que Scotiabank realizara la enajenación del proyecto CBTS que no estaba inscrito a su favor. Asimismo, el señor Rodas Nazario argumentó que el querellado actuó en favor de sus intereses personales al comunicarse y ofrecer el proyecto de CBTS a posibles inversionistas a cambio de una participación de 40% para su beneficio y ser el desarrollador. Específicamente, mencionó las gestiones que realizó el licenciado Rafucci Caro con el Sr. José Marchand, Ingeniero externo de Scotiabank, y presentó dos cartas como evidencia de las comunicaciones.[4]

---

[3] La Escritura Núm. 5 para constituir los apartamentos del proyecto CBTS fue autorizada el 2 de abril de 2005 por el notario Felipe Sanabria.

[4] Tras culminar la relación de abogado-cliente con el señor Rodas Nazario, el 14 de octubre de 2012, el querellado, mediante carta, discutió con el Ingeniero Marchand sobre las gestiones de la venta de CBTS al inversionista *Black Point* y acordaron la división de las ganancias -$225,000 para el querellado y $75,000 para el Ingeniero Marchand-.

Por otro lado, el 1 de mayo de 2014, el licenciado Rafucci Caro envió una misiva al Sr. Dennis Frank, Inversionista de *Silvergate Bank* con interés en comprar CBTS para indicarle que el referido proyecto

En lo que respeta a las imputaciones sobre violación a la confidencialidad, el señor Rodas Nazario adujo que el 30 de noviembre de 2012, el licenciado Rafucci Caro envió un correo electrónico a la Lcda. Sonia B. Alfaro de la Vega (licenciada Alfaro de la Vega), representante legal de Scotiabank, en el que hizo recomendaciones e información para brindar asesoría legal a Scotiabank y, además, acompañó un Borrador del interdicto posesorio.[5] Conforme a ello, arguyó que, el querellado compartió información confidencial y privilegiada con la licenciada Alfaro de la Vega. Planteó que el querellado infringió el Canon 21 del Código de Ética Profesional, infra, al incurrir en conflicto de intereses por representación sucesiva adversa y representación adversa de sus intereses personales con los de su cliente.

Por su parte, el 2 de agosto de 2016, el licenciado Rafucci Caro presentó su contestación a la queja por virtud de la cual alegó que las **Escrituras Núm. 25, 26 y 27** no fueron presentadas en el Registro de la Propiedad de forma coetánea con la autorización porque tuvo problemas para localizar a la parte compradora para aclarar información y constatar si la propiedad era su vivienda principal. Además, señaló que la parte compradora no se trasladó a vivir a la propiedad y asumió

---

tenía una opción de compra en ese momento con Project One Corp, una compañía que era propiedad del querellado. Véanse: Anejo 6 y 11 de la Queja.

[5] Véase Anejo 8 de la Queja.

todos los gastos y el pago de honorarios de abogado sobre las escrituras en lugar del señor Rodas Nazario como parte vendedora. **Destacó que el 27 de abril de 2016 cumplió con la presentación de los referidos instrumentos públicos en el Registro de la Propiedad.**

En cuanto a las **Escrituras Núm. 17 y 19**, el licenciado Rafucci Caro sostuvo que las presentó el 25 de junio de 2012 en el Registro de la Propiedad. No obstante, justificó la tardanza en que el inmueble donado tenía una clasificación comercial y no de vivienda principal. **Asimismo, señaló que remitió $637 de los aranceles y las copias certificadas de las escrituras al creer de buena fe que en ese momento se habían pagado solamente los honorarios de abogado sin los aranceles. Adujo que la Escritura Núm. 68 se otorgó y presentó el 30 de septiembre de 2015** en el Registro de la Propiedad.

En cuanto al conflicto de interés por su representación legal, el querellado las catalogó como alegaciones infundadas, por lo que solicitó el archivo de la queja. El licenciado Rafucci Caro explicó que fue abogado del señor Rodas Nazario y SBTS desde el 2008. Mencionó que sugirió al señor Rodas Nazario la adquisición del proyecto CBTS y lo recomendó al señor Sacarello como posible comprador del mismo. Como resultado de lo anterior, afirmó que Scotiabank firmó un contrato de opción de compraventa con SBTS el 5 de abril de 2012. Aseveró que otorgó asesoría legal al señor Rodas

Nazario durante la negociación del contrato de opción de compraventa el 5 de abril de 2012, entre otras gestiones. Esbozó que el 5 de agosto de 2012, fecha establecida para ejercer la opción de compraventa, el señor Rodas Nazario le comunicó que no había obtenido el financiamiento requerido. Por ello, solicitaron la extensión del término a Scotiabank en dos ocasiones. Sostuvo que la última prórroga otorgada venció el 18 de octubre de 2012, fecha en que AFV denegó la solicitud de préstamo del señor Rodas Nazario por falta de capacidad económica. A pesar de ello, enunció que SBTS sometió una nueva solicitud ante la AFV el 6 de abril de 2013 que fue denegada el 20 de agosto de 2013. **En lo pertinente, el licenciado Rafucci Caro enfatizó que la relación profesional entre ambos finalizó el 8 de octubre de 2012, por petición del señor Rodas Nazario.**

En cuanto a la relación con Scotiabank, el querellado arguyó que fue contratado para subsanar unos defectos en la Escritura Núm. 5, que impidieron la inscripción del proyecto CBTS en el Registro de la Propiedad. Así pues, el licenciado Rafucci Caro enfatizó que continuó su relación profesional con Scotiabank al fungir como notario para corregir las escrituras después de culminar su relación profesional con el señor Rodas Nazario.

Por otro lado, el querellado aseveró que el correo electrónico que envió el 30 de noviembre de 2012 a la

licenciada Alfaro de la Vega fue una actuación imprudente. Asimismo, aceptó que al terminar su relación profesional con el señor Rodas Nazario comenzó a realizar gestiones para adquirir el proyecto o promoverlo a terceros. Sin embargo, indicó que durante la vigencia de la relación profesional con el señor Rodas Nazario no realizó gestión alguna para su beneficio propio ni promovió la venta del proyecto a terceros. También, arguyó que no compartió información privilegiada con Scotiabank y que informó al señor Rodas Nazario que Scotiabank lo contrató para llevar a cabo la subsanación de la Escritura Núm. 5.[6]

Así las cosas, el 14 de octubre de 2016, la Oficina de la Procuradora General presentó su Informe ante este Tribunal. Expuso que el licenciado Rafucci Caro incumplió con los Cánones 18, 19 y 21 del Código de Ética Profesional, *infra*. En cuanto a la comunicación y las gestiones en el otorgamiento e inscripción de los instrumentos públicos,[7] el Procurador General concluyó que la evidencia presentada demostró el retraso en la presentación de las **Escrituras Núm. 25, 26 y 27** en el Registro de la Propiedad.[8] Al considerar que, el querellado incluyó los recibos de presentación de las

---

[6] Advertimos que el licenciado Rafucci Caro evidenció su alegación con la presentación de un correo electrónico que envió al licenciado Rodas Nazario el 1 de agosto de 2012, relacionado con las solicitudes de prórroga del contrato de opción de compraventa y anejó las cartas que dirigió al señor Sacarello, como representante de SBTS. Véase Anejo 5 de la Queja.

[7] Informe de la Procuradora General, pág. 9.

[8] Íd., págs. 8-9.

escrituras públicas en su contestación a la queja, aseveró que el querellado no logró justificar la tardanza de la presentación tardía en el Registro de la Propiedad.

Por otra parte, la Oficina del Procurador General señaló que las excusas brindadas por el licenciado Rafucci Caro sobre las **Escrituras Núm. 17, 18 y 19** ——[que fueron otorgadas el 19 de junio de 2012]—— al argumentar que la propiedad donada mantuvo la clasificación de uso comercial sin ser modificada a vivienda principal resulta incompatible con la presentación en el Registro de la Propiedad en el 2012 sin modificar el contenido contradictorio con la información provista. Por consiguiente, concluyó que el licenciado Rafucci Caro incumplió con el deber de cuidado, diligencia e información que exigen los Cánones 18 y 19 del Código de Ética Profesional, *infra*.

Con relación al incumplimiento del Canon 21 del Código de Ética Profesional, *infra*, razonó que

**el licenciado Rafucci Caro aceptó que envió un correo electrónico a la abogada de Scotiabank relacionado con el caso que SBTS instó en contra del banco (Caso Núm. DAC2012-3035). En dicho correo de 30 de noviembre de 2012[,] el abogado realizó sugerencias a la abogada de cómo atender el caso que presentó su ex cliente y ofreció su asesoría en cuanto al derecho aplicable y la interpretación del mismo […]. La acción civil se relacionaba con la opción de compra que SBTS ofreció al banco para el proyecto [CBTS].** El licenciado Rafucci Caro había realizado gestiones de representación y para el beneficio del [señor Rodas Nazario] en cuanto a tales negociaciones. **Con dicha actuación el abogado incurrió en violación al Canon 21 de Ética**

**Profesional al incurrir en representación sucesiva
adversa.** (Énfasis suplido).[9]

Posteriormente, el 26 de octubre de 2016, el Lcdo.
Manuel E. Ávila De Jesús, Director de la Oficina de
Inspección de Notarías (ODIN), presentó su *Informe*. Como
resultado de la admisión del querellado sobre la
presentación tardía de las escrituras en el Registro de
la Propiedad, evaluó las distintas justificaciones que
éste esbozó. ODIN coligió que el licenciado Rafucci Caro
"no sustentó sus alegaciones ni explicó cuál y por qué la
información [que le faltaba] era de tal relevancia que
impedía la presentación de los instrumentos públicos ante
el Registro de la Propiedad; esto, sin que a su vez fuera
motivo suficiente para no autorizar los mismos".[10] De esa
manera, ODIN sostuvo que el querellado transgredió los
Cánones 12 y 19 del Código de Ética Profesional, *infra*,
al faltar a su deber de diligencia en la presentación
oportuna de instrumentos públicos en el Registro de la
Propiedad y desatender la comunicación adecuada con sus
clientes sobre el estado de presentación e inscripción de
los instrumentos públicos que autorizó.[11] Finalmente,
recomendó que la sanción del querellado se limitara a una
amonestación y una advertencia

> para que [el querellado] en el futuro actúe con
> mayor diligencia en las obligaciones que asuma
> voluntariamente y se asegure de que los títulos
> que instrumenta tengan acceso al Registro de la

---

[9] Íd., pág. 13.

[10] Informe de la Oficina de Inspección de Notarías, pág. 7.

[11] Íd.

Propiedad Inmobiliaria, además, para que cumpla con su deber de mantener informados a sus clientes de todo asunto relevante vinculado con los instrumentos públicos que autorice […].[12]

El 17 de noviembre de 2016, el querellado presentó su <u>Contestación a Informe de la Oficina del Director de Inspección de Notarías</u>. Posteriormente, el 23 de noviembre de 2016, remitió la <u>Contestación al Informe de la Procuradora General</u> y reafirmó los planteamientos esbozados en la contestación a la queja.

Tras evaluar el <u>Informe de la Procuradora General</u>, el <u>Informe</u> de la ODIN y las contestaciones presentadas por el licenciado Rafucci Caro, el 24 de febrero de 2017 ordenamos a la <u>Oficina de la Procuradora General</u> a presentar la querella contra el licenciado Rafucci Caro.

En cumplimiento con nuestra orden, la Oficina del Procurador General presentó la <u>Querella</u> correspondiente mediante la cual formuló cuatro cargos por incumplimiento con los Cánones 18, 19, 21 y 38 del Código de Ética Profesional, *infra*.

El 13 de septiembre de 2017, el licenciado Rafucci Caro presentó su <u>Contestación a la querella</u>. En cuanto al desempeño de su función notarial, reiteró las alegaciones esbozadas anteriormente, pero admitió que pudo haber actuado con mayor diligencia. En cuanto al cargo relacionado con el Canon 21 del Código de Ética Profesional, *infra*, reafirmó que el correo electrónico

---

[12] Íd., pág. 8.

que envió a la representante legal de Scotiabank fue un acto imprudente. Además, sostuvo que:

> **La representación de Scotiabank en los asuntos notariales relacionados con el proyecto, coetánea y posterior a la representación del [señor Rodas Nazario] en el proceso de ejercer la opción de compra y luego de finalizada la misma, no configura representación de los clientes con intereses adversos ya que no existía una relación sustancial o adversa entre ambas representaciones.** Se trataba de dos representaciones que no tenían relación alguna. (Énfasis suplido).[13]

Conforme a lo anterior, explicó que tras finalizar la relación profesional entre el señor Rodas Nazario y el querellado sin que se renovara el contrato de opción después de caducar, no existía un impedimento legal ni ético que limitara las gestiones para la adquisición del proyecto por otras personas. Por lo tanto, planteó que no surgió un conflicto de intereses personales, ya que no se estableció una relación contractual entre Scotiabank y SBTS. Finalmente, manifestó que su respuesta al Canon 38 del Código de Ética Profesional, *infra*, es la misma que presentó en los cargos anteriores.

Posteriormente, el 4 de octubre de 2018 designamos a la Hon. Mirinda Vicenty Nazario, Ex Jueza del Tribunal de Apelaciones, como Comisionada Especial (Comisionada) para que recibiera la prueba y nos emitiera un Informe con las determinaciones de hechos y recomendaciones que estimara pertinentes. Después de la celebración de una vista sobre el estado de los procedimientos, las partes informaron a

---

[13] Contestación a querella, pág. 7.

la Comisionada que acordaron que la Oficina del Procurador General sometería su caso basado en la prueba que constaba en el expediente y presentaron sus respectivos memorandos de derecho.

El 4 de noviembre de 2019, la Comisionada remitió su Informe[14] y concluyó que la conducta del querellado violó

---

[14] La Comisionada presentó en su Informe las determinaciones de hechos siguientes:

1. El querellado fue abogado y notario del [señor Rodas Nazario] y de sus corporaciones [SBTS] y [Estancias]. La relación abogado cliente finalizó el 8 de octubre de 2012.

2. El [licenciado Rafucci Caro] otorgó como notario público una serie de escrituras, anteriormente descritas, las cuales no se presentaron coetáneamente en su otorgamiento al Registro de la Propiedad. Dichas escrituras tardaron años en poder registrarse.

3. El Lcdo. Rafucci Caro nunca le notificó a su cliente el estatus de la inscripción de ninguna de dichas escrituras ante el Registro de la Propiedad.

. . . . . . . .

6. La ODIN recomienda la imposición de una amonestación al Lcdo. Rafucci por la falta de diligencia en la presentación oportuna de las escrituras ante el Registro de la Propiedad y por la ausencia de una comunicación adecuada entre él y su cliente.

7. El [licenciado Rafucci Caro] admitió que pudo haber actuado con mayor diligencia, sin embargo no se evidenció que mediara perjuicio o daño a[l] [señor Rodas Nazario].

. . . . . . . .

10. El 3 de abril de 2012 SBTS opcionó dicho proyecto mediante el pago de $100,000 dólares por un periodo de 4 meses. El licenciado Rafucci Caro negoció las condiciones de dicho contrato de opción a compra con el Banco a favor del [señor Rodas Nazario].

. . . . . . . .

13. Transcurrido el término para ejercer la opción incluyendo dos prórrogas concedidas, SBTS no pudo obtener el financiamiento necesario para adquirir el proyecto, dando por cancelada la opción de compra el 18 de octubre de 2012. A raíz de unas diferencias entre las partes, se presentó un pleito civil *Serenity by the Sea v. Scotiabank de Puerto Rico* identificado con el alfanumérico DAC20123035.

. . . . . . . .

15. En el ínterin, Scotiabank había contratado al licenciado Rafucci Caro para que subsanara deficiencias en la escritura matriz y escrituras de compraventa del proyecto, la cual había sido sometida al régimen de propiedad horizontal desde el 2 de abril de 2005 y tenía varios errores los cuales era necesario otorgar actas de subsanación con 22 titulares del proyecto.

16. El licenciado Rafucci Caro admite que posterior a [que] terminara su relación profesional con el [señor Rodas

los Cánones 18, 19, 21 y 38 del Código de Ética Profesional, *infra.* Finalmente, recomendó la amonestación del licenciado Rafucci Caro. La Comisionada consideró como atenuantes que el querellado aceptó desde el inicio que pudo haber actuado con mayor diligencia en los asuntos notariales; que, aunque tardíamente, cumplió con la presentación de los instrumentos públicos en el Registro de la Propiedad; devolvió las copias certificadas y los aranceles registrales otorgados para la inscripción de los negocios jurídicos; el señor Rodas Nazario no presentó evidencia de algún daño o consecuencia negativa como resultado de la tardanza en la presentación; el querellado admitió que envió el correo electrónico a la representante legal de Scotiabank y aceptó que incurrió en una acción imprudente; había ausencia de prueba para establecer que SBTS no adquirió el proyecto por las acciones del querellado, y que las

Nazario] continuó su relación profesional con Scotiabank para realizar las correcciones de las escrituras del proyecto. El proceso de corrección se completó para el mes de febrero de 2013.

17. El querellado acepta que terminada su relación profesional con el [señor Rodas Nazario] y al estar todavía el proyecto en venta, comenzó a realizar gestiones para adquirir el mismo o promoverlo a terceros.

18. El 30 de noviembre de 2012, el querellado le dirige un correo electrónico a la Lcda. Sonia Alfaro de la Vega, representante legal de Scotiabank en el caso civil DAC20122035 y le sugiere radicar un interdicto posesorio para "virarle la tortilla" al [señor Rodas Nazario]. Con dicho correo le acompañó un borrador de interdicto posesorio con recomendaciones para la vista del caso en contra del [señor Rodas Nazario].

19. El querellado reconoce que haber enviado el correo electrónico a Scotiabank para sugerir el curso de acción en el caso contra el [señor Rodas Nazario] fue un acto imprudente de su parte. Informe de la Comisionada Especial, págs. 10-13.

querellas presentadas en el pasado en contra del licenciado Rafucci Caro fueron archivadas.

En vista de lo anterior, con el beneficio del Informe de la Comisionada Especial, con este cuadro fáctico, procedemos a exponer los fundamentos en los cuales se sostiene nuestra determinación de acoger la recomendación de la Comisionada y amonestar al licenciado Rafucci Caro.

**II**

Como parte de nuestro poder inherente para regular la profesión de la abogacía, nos compete asegurarnos de que los miembros admitidos a la profesión de la abogacía, así como la notaría, ejerzan sus funciones de manera responsable, competente y diligente. Particularmente, el notario debe ejercer su función con extremo cuidado, esmero y celo profesional.[15] Esto responde a que está obligado a cumplir estrictamente con la Ley Notarial de Puerto Rico, Ley Núm. 75 del 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*, el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV y los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX.[16] El incumplimiento con tales

---

[15] *In re Sánchez Reyes*, 2020 TSPR 102, 204 DPR ___ (2020); *In re Maldonado Maldonado*, 197 DPR 802, 809 (2017); *In re Pacheco Pacheco*, 192 DPR 553, 562 (2015); *In re Ayala Oquendo*, 185 DPR 572, 580 (2012); *In re Belén Trujillo*, 184 DPR 793, 801 (2012).

[16] *In re García Cabrera*, 201 DPR 902, 918 (2019); *In re Palmer Ramos*, 195 DPR 245, 254-255 (2016); *In re Toro González II*, 193 DPR 877, 889 (2015); *In re Vargas Velázquez*, 193 DPR 681, 693 (2015).

preceptos normativos lo expone a sanciones disciplinarias.[17]

## A. Canon 18 (Competencia del abogado y consejo al cliente)

El Canon 18 del Código de Ética Profesional (Canon 18), *supra*, requiere que los abogados rindan una labor idónea de competencia y diligencia.[18] Asimismo, el notario debe demostrar que posee los conocimientos jurídicos necesarios durante la ejecución de sus funciones.[19]

Ahora bien, nuestro ordenamiento no impone la obligación al notario de presentar instrumentos públicos al Registro de la Propiedad. Esta es una obligación adicional que surgiría por vínculo contractual ajeno a la responsabilidad ordinaria e inherente del ejercicio de la notaría.[20] Es decir, para que surja esta obligación debe haberse pactado de esa forma. Entonces ——y sólo entonces—— se asume la obligación de presentarla, responsabilidad que debe cumplir el abogado diligentemente al amparo del Canon 18.

---

[17] In re Ayala Oquendo, supra; In re Montalvo Guzmán, 164 DPR 806, 810 (2005).

[18] In re García Cabrera, supra, págs. 924-925; In re Peña Osorio, supra, pág. 790; In re Maldonado Maldonado, supra, pág. 812.

[19] In re Sánchez Reyes, supra; In re Torres Rivera, 2020 TSPR 23, 204 DPR ___ (2020).

[20] In re Sánchez Reyes, supra; In re García Cabrera, supra, pág. 926; In re Avilés, Tosado, 157 DPR 867, 893 (2012).

Cónsono con lo anterior, hemos decretado que infringe el Canon 18, el notario que presenta ante el Registro de la Propiedad una escritura sin cumplir con su deber de verificar si el instrumento público posee defectos que impidan su inscripción en el Registro de la Propiedad.[21] Esto se debe a que la referida conducta demuestra el desconocimiento del notario de las normas jurídicas relativas a los negocios jurídicos autorizados.[22] Por lo tanto, la notificación de faltas que impiden la inscripción en el Registro de la Propiedad por parte del Registrador, impone al notario el deber de atenderlas de manera diligente, ya que tales faltas inciden sobre los derechos de las partes otorgantes en el negocio jurídico autorizado.[23]

---

[21] In re Sánchez Reyes, supra; In re García Cabrera, supra, págs. 925-926.

[22] In re Maldonado Maldonado, supra, pág. 813; In re Vargas Velázquez, supra, págs. 694-695; In re Pacheco Pacheco, supra, pág. 564.

[23] En cuanto a las omisiones del notario, el Artículo 63 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, 30 LPRA sec. 2266, -antes de ser enmendado- disponía que:
El notario o funcionario que por su falta cometiere alguna omisión que impida inscribir el acto o contrato, conforme a lo dispuesto en la ley, subsanará prontamente, al ser requerido, extendiendo a su costo un nuevo documento, si fuere posible e indemnizando en todo caso a los interesados de los perjuicios que les ocasionen su falta. Íd.

Del mismo modo, el Artículo 240 de la Ley Núm. 210-2015, 30 LPRA sec. 6392, -después de ser enmendado- establece lo siguiente:
El notario o funcionario que por su falta cometa alguna omisión que impida inscribir el acto o contrato contenido en el documento presentado, conforme lo dispuesto en la ley, subsanará prontamente y a su costo al ser requerido mediante notificación. De ser necesario y posible, extenderá un nuevo documento.

Todo notario cuyo documento sea notificado en tres ocasiones por los mismos defectos sin que se corrijan los mismos, podrá ser referido por el Registrador vía correo electrónico a la Oficina de Inspección de Notarías para la acción correspondiente. Dicho referido se efectuará simultáneamente con la tercera notificación. Íd.

**B. Canon 19 (Información al cliente)**

El Canon 19 del Código de Ética Profesional (Canon 19), *supra*, dispone que "[e]l abogado debe mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado". Ello "constituye un elemento imprescindible en la relación fiduciaria que caracteriza el vínculo abogado-cliente".

Al amparo de lo anterior, en In re Maldonado Maldonado, 197 DPR 802, 818 (2017), concluimos que un letrado incumplió con el Canon 19 al no mantener informada a la quejosa sobre el estado de la presentación de una escritura. Así también lo reiteramos en In re García Cabrera, 201 DPR 902, 928 (2019), al señalar que el notario tiene la responsabilidad de informar a sus clientes sobre las gestiones realizadas conforme al desarrollo de la encomienda por la que fue contratado. En específico, allí reafirmamos que esta obligación de mantener informado a los clientes es distinta y separada del deber de diligencia que se exige a los miembros de la profesión bajo el Canon 18.[24]

De otra parte, en In re Rodríguez Mercado, 133 DPR 208 (1993), determinamos que un abogado incumplió con el Canon 19, ya que se obligó a preparar unas escrituras y obtener su inscripción en el Registro de la Propiedad, pero, a pesar de varios intentos, la querellante no logró

---

[24] In re García Cabrera, supra, pág. 928.

comunicarse con el letrado. Ello, impidió que le fueran informadas las gestiones de presentación e inscripción en el Registro de la Propiedad, lo que mantuvo inconcluso este trámite por más de siete años.

## C. **Canon 21 (Intereses encontrados)**

El Canon 21 del Código de Ética Profesional (Canon 21), *supra*, dispone, en lo pertinente, lo siguiente:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.

> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aún cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste […].

Este canon impone a los miembros de la profesión legal el deber de lealtad y fidelidad con su cliente al

evitar incurrir en la representación de intereses encontrados.[25] Como parte de la lealtad requerida, la clase togada debe ejercer un criterio profesional independiente y no puede revelar confidencias que el cliente le haya comunicado.[26]

Al amparo del Canon 21, hemos expresado que los miembros de la profesión legal deben evitar las instancias siguientes que representan conflictos de intereses:

(i) aceptar la representación de un cliente sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior, situación conocida como representación sucesiva adversa; (ii) aceptar la representación simultánea de dos (2) clientes con intereses encontrados, situación conocida como representación simultánea de clientes, y (iii) aceptar la representación legal conociendo que su juicio profesional puede verse afectado por sus intereses personales.[27]

El segundo escenario reseñado es lo que se conoce como la representación simultánea adversa. Al evaluar este tipo de representación conflictiva hemos indicado que "todo abogado debe evitar que, en beneficio de un cliente, se abogue por aquello a lo que debe oponerse en cumplimiento de sus obligaciones actuales con otro cliente, puesto que abogaría así por causas contrarias".[28]

---

[25] In re Ortiz, Rivera, 195 DPR 122, 132-133 (2016); In re Reyes Coreano, 190 DPR 739, 753 (2014).

[26] In re Pietri Torres, 201 DPR 583, 595 (2018); In re Reyes Coreano, supra, pág. 754; In re Pérez Marrero, 185 DPR 449, 457 (2012).

[27] In re Soto Aguilú, 202 DPR 137, 144-145 (2019); In re Aponte Duchesne, 191 DPR 247, 256 (2014); In re Báez Genoval, 175 DPR 28, 36 (2008). Véase, además, In re Gordon Menéndez, 183 DPR 628, 639-641 (2011).

[28] In re González Hernández, 190 DPR 164, 174 (2014).

Por lo tanto, para que esta prohibición se active es necesario que exista una relación abogado-cliente dual.[29]

Sin embargo, el primer y tercer escenario reseñado no dependen de una relación profesional vigente con dos clientes con intereses encontrados. El primer escenario es lo que se conoce como **representación sucesiva adversa.** Este tipo de conflicto se configura cuando un abogado representa a un cliente en un asunto que está sustancialmente relacionado con otro asunto en el cual representó a un cliente anterior y los intereses de ambos son adversos.[30] Después de todo, los abogados no solo deben evitar el conflicto de intereses actual, sino también el potencial.[31]

Al aplicar las disposiciones del Canon 21, ante un planteamiento de representación sucesiva de clientes con intereses adversos, hemos resuelto que el cliente no tiene que probar que en efecto hubo una violación al principio de confidencialidad.[32] Sólo se requiere que se demuestre que el abogado mantuvo una relación de abogado-cliente con una persona que al tiempo presente tiene una controversia con otra persona que él representa; que la

---

[29] In re Pietri Torres, supra, págs. 595-596; In re Báez Genoval, supra.

[30] In re Soto Aguilú, supra, pág. 144 citando a In re Ortiz, Rivera, supra, pág. 133; In re González Hernández, supra, pág. 173.

[31] In re Meléndez Figueroa, 203 DPR 18, 22 (2019); In re González Hernández, 190 DPR 164, 183 esc. 18 (2014); In re Avilés, Tosado, 157 DPR 867, 882-884 (2002). Es decir, bastará con que haya un conflicto de intereses potencial para que el abogado quebrante su deber de lealtad. In re Torres Viera, supra, pág. 311; In re Ortiz Martínez, supra, pág. 581.

[32] In re Pietri Torres, supra, pág. 596; In re Báez Genoval, supra, pág. 37.

representación legal de su cliente anterior está sustancialmente relacionada con la representación profesional de su cliente actual, y que la representación legal actual resulta adversa a los intereses de su cliente original.[33] Finalmente, este conflicto no se subsana solo porque el letrado alegue que no utilizará las confidencias de sus clientes en perjuicio de estos.[34]

Así, el Canon 21, prohíbe el tercer escenario que se configura "cuando un abogado asume la representación legal de un cliente a sabiendas de que su juicio profesional puede verse afectado por sus intereses personales".[35] Es decir, porque la relación abogado-cliente entra en conflicto con los intereses personales, familiares, económicos, profesionales, o de otra índole, del propio abogado.[36]

D. **Canon 38 (Preservación del honor y dignidad de la profesión)**

El Canon 38 del Código de Ética Profesional (Canon 38), *supra*, puntualiza que los dos valores principales con los que debe cumplir un abogado son la dignidad y el honor al ejercer la abogacía y en su vida privada. Para ello, instituye el deber de evitar hasta la apariencia de conducta profesional impropia. Anteriormente, hemos resuelto que cuando un abogado asume una representación simultánea de clientes o una representación sucesiva

---

[33] In re Ortiz Martínez, 161 DPR 572, 580-581 (2004).

[34] In re Báez Genoval, supra, págs. 36-37.

[35] In re Gordon Menéndez, supra, pág. 641.

[36] Íd.

adversa que resulta en un **real o potencial** conflicto de intereses incurre en una conducta que infringe los Cánones 21 y 38.[37]

Expuesta la norma jurídica que aplica a los antecedentes fácticos reseñados, pasemos a evaluar la conducta exhibida por el licenciado Rafucci Caro.

### III

Primeramente, debemos considerar si al ejercer su función notarial infringió los Cánones 18 y 19 del Código de Ética Profesional, *supra*.

En síntesis, el querellado se obligó a autorizar varias escrituras públicas. Además, asumió la obligación adicional de realizar el trámite relacionado con la presentación en el Registro de la Propiedad según admitió desde el inicio del trámite disciplinario.

De un examen del expediente ante nuestra consideración se infiere que el licenciado Rafucci Caro faltó al deber de brindar la información completa a su cliente sobre el estado de la presentación de las escrituras mencionadas. Claramente, el señor Rodas Nazario advino en conocimiento sobre la información relacionada con el incumplimiento de la presentación en el Registro de la Propiedad varios años después de

---

[37] In re Aponte Duchesne, supra, pág. 258; In re Gordon Menéndez, supra, pág. 642; In re Monge García, 173 DPR 379, 385 (2008); In re Torres Viera, 170 DPR 30, 312 (2007).

otorgar las mismas. Por lo tanto, el licenciado Rafucci Caro incumplió con los Cánones 18 y 19.[38]

Establecido lo anterior, **evaluamos si el querellado quebranto los Cánones 21 y 38 del Código de Ética Profesional**, *supra*, **al ejercer la representación legal del señor Rodas Nazario**. En primer lugar, analizamos si al ejercer la representación legal del señor Rodas Nazario al realizar las gestiones y las negociaciones relacionadas con la opción de compraventa del proyecto mientras fungía como notario para Scotiabank incurrió en representación simultánea de clientes con intereses antagónicos (representación simultánea adversa). Posteriormente, examinamos si los intereses personales del querellado interfirieron con la representación adecuada y efectiva del señor Rodas Nazario. En tercer lugar, evaluamos si las actuaciones del querellado constituyen representación sucesiva adversa.

Como abogado, el licenciado Rafucci Caro tenía la obligación de cumplir con los requisitos del contrato de opción de compraventa para que su cliente pudiera completar el mismo y ejercer la compraventa. Según surge del expediente, las prórrogas que solicitó a Scotiabank surgieron en parte, por los defectos que presentaba la Escritura Núm. 5.

Durante los trámites mencionados, el querellado fue contratado por Scotiabank, aproximadamente en agosto de

---

[38] Íd.

2012, para subsanar la Escritura Matriz del proyecto CBTS. El licenciado Rafucci Caro brindó sus servicios profesionales a dos clientes que no tenían intereses encontrados en ese momento. Claramente, al fungir como el notario de Scotiabank, el señor Rodas Nazario estaría subsanando las faltas de la Escritura Matriz del proyecto al ejecutar la acción de otorgar eficacia a la inscripción de la Escritura Núm. 5 en el Registro de la Propiedad. Este trámite beneficiaba a ambos clientes. En ese sentido, el beneficio que buscaba el querellado como representante legal del señor Rodas Nazario no era contradictorio ni antagónico al cumplir con su deber de subsanar la Escritura Núm. 5 al ser contratado simultáneamente para fungir como notario de Scotiabank. La acción de subsanar la Escritura Núm. 5, respondía al interés del señor Rodas Nazario que buscaba al ejercer la opción de compraventa y convertirse en el propietario del proyecto en cuestión.

En lo que respecta a las imputaciones de conflicto por los intereses personales y beneficios que persiguió el licenciado Rafucci Caro, quedó establecido por admisión de ambas partes que la relación abogado-cliente culminó el 8 de octubre de 2012. A pesar de que el contrato de opción de compraventa del proyecto que obtuvo el señor Rodas Nazario estuvo vigente hasta el 18 de

octubre de 2020,[39] no vemos un impedimento ético en que el querellado realizara gestiones para conseguir un comprador o demostrar su interés personal en el proyecto después de que transcurrió el plazo establecido en el contrato de opción de compraventa. Conforme reconocieron ambas partes, el señor Rodas Nazario no pudo ejercer la opción de compraventa al no obtener el financiamiento que solicitó en la institución financiera. El interés que el querellado demostró luego de culminar el contrato no implica que existió durante la vigencia de la relación abogado-cliente con el señor Rodas Nazario. Además, no se presentó prueba para establecer que durante la vigencia del contrato de opción el licenciado Rafucci Caro obstaculizó las gestiones que realizó SBTS para la adquisición del proyecto. Por el contrario, el querellado peticionó en beneficio del señor Rodas Nazario varias prórrogas al contrato de opción de compraventa.

Las gestiones de financiamiento realizadas por el señor Rodas Nazario al culminar el término del contrato de opción de compraventa no obligaban a Scotiabank a venderle el proyecto, ni impedían que el querellado pudiera presentar su interés personal o realizara gestiones para adquirir otro comprador del proyecto. Como consecuencia, es forzoso concluir que el querellado no

---

[39] Cabe resaltar que Scotiabank notificó al señor Rodas Nazario que no le concedería una prórroga adicional desde el 24 de septiembre de 2012.

quebrantó su deber de lealtad al ejercer su juicio profesional correctamente.

En lo que respecta a las imputaciones de representación sucesiva adversa, sabe recordar que el querellado mantuvo una relación abogado-cliente con el señor Rodas Nazario desde 2008. Durante su representación legal, el licenciado Rafucci Caro realizó las negociaciones relacionadas a la opción de compraventa para obtener el proyecto CBTS, la cual no llegó a ejercerse ante falta de financiamiento.

No obstante, el querellado admitió que envió un correo electrónico a la licenciada Alfaro de la Vega, representante legal de Scotiabank. En esta comunicación el licenciado Rafucci Caro presentó **sugerencias de cómo atender el pleito judicial que originó con una demanda instada por SBTS. Además, expuso el derecho aplicable y recomendó la presentación de un interdicto posesorio o un *injunction* contra el señor Rodas Nazario. Según mencionamos anteriormente, esta demanda fue presentada porque no se concretó la opción de compraventa.** Como consecuencia ambos procesos guardaban una relación sustancial. Ciertamente, ambas partes tenían intereses adversos que provocaban un conflicto real por representación sucesiva adversa. Al así actuar, el licenciado Rafucci Caro incurrió en un insostenible conflicto de intereses. En efecto, desplegó una conducta

que denota imprudencia y menosprecio del deber de lealtad con cliente previos y actuales.

A esos efectos, conviene señalar que la actuación del querellado, de **brindar asesoría** sobre la estrategia legal del caso al ofrecer detalles e información sobre el señor Rodas Nazario, colocó a SBTS en una situación vulnerable como parte demandante en la causa de acción contra Scotiabank. Con ello, el licenciado Rafucci Caro infringió los Cánones 21 y 38.

En cuanto a la determinación de la sanción disciplinaria, debemos considerar los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos.[40]

En la evaluación de la sanción sobre la conducta del letrado, al igual que la Comisionada consideramos como atenuantes que el licenciado Rafucci Caro aceptó sus faltas mostrando arrepentimiento desde el inicio; que realizó la inscripción de las escrituras y devolvió los aranceles; que el señor Rodas Nazario no presentó

---

[40] In re Sánchez Reyes, supra; In re Soto Aguilú, supra, págs. 147-148; In re López Santiago, 199 DPR 797, 818 (2018); In re Maldonado Maldonado, supra, pág. 818.

evidencia sobre perjuicio causado por la tardanza en la presentación de las escrituras en el Registro de la Propiedad, y que las querellas presentadas en el pasado en contra del licenciado Rafucci Caro han sido archivadas.[41]

Consecuentemente, considerada la totalidad de las circunstancias, acogemos la recomendación de la Comisionada, por lo que limitamos la sanción del licenciado Rafucci Caro a una amonestación.[42]

**IV**

Por los fundamentos expuestos, amonestamos al licenciado Rafucci Caro. Le apercibimos de que en el futuro deberá actuar con mayor diligencia en el ejercicio profesional que desempeña y ceñirse estrictamente a los preceptos que rige el Código de Ética Profesional, *supra*, y los mandatos de la Ley Notarial de Puerto Rico, *supra*. Se dictará Sentencia de conformidad.

---

[41] Advertimos que el licenciado Rafucci Caro tiene pendiente una queja que se encuentra en procedimiento de Querella CP-2016-1. Tras la designación de la Hon. Enid Martínez Moya como Comisionada Especial, el caso se encuentra paralizado y pendiente de la celebración de vista desde el pasado mes de marzo. Recientemente, corroboramos con la Secretaría del Tribunal Supremo que la misma continúa paralizada.

[42] In re Soto Aguilú, supra, pág. 148; In re Aponte Duchesne, supra, págs. 258-259; In re García Cabrera, 188 DPR 186, 214-215 (2013); In re Mulero Fernández, 174 DPR 18, 38-39 (2008); In re Monge García, supra, pág. 388; In re Chiques Velázquez, 161 DPR 303, 307 (2004); In re Vélez Lugo, 164 DPR 751, 755-756 (2005).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|--------|--|
| Carlos H. Rafucci Caro | CP-2017-0013 |

SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2021.

Por los fundamentos expuestos, amonestamos al Lcdo. Carlos H. Rafucci Caro. Le apercibimos de que en el futuro deberá actuar con mayor diligencia en el ejercicio profesional que desempeña y ceñirse estrictamente a los preceptos que rige el Código de Ética Profesional, *supra*, y los mandatos de la Ley Notarial de Puerto Rico, *supra*.

Notifíquese de inmediato.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres concurre sin opinión escrita. Los Jueces Asociados señores Kolthoff Caraballo y Estrella Martínez no intervinieron.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo